**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KALINA SCOLLON,

      Plaintiff,

    v.                                                                         No. 1:21-cv-00565-WJ-JFR

VOLT PROPERTIES CAMINO, LLC, and
PROCOLLECT, INC.,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**DENYING DEFENDANT VOLT'S**</u>
<u>**FIRST MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

THIS MATTER comes before the Court upon a First Motion to Dismiss for Failure to State a Claim filed by Volt Properties Camino, LLC. on October 8, 2021 **(Doc. 24)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, the motion is DENIED.

Both Defendants in this case have filed separate dispositive motions, but this Memorandum Opinion and Order addresses only the motion filed by Defendant Volt Properties Camino, LLC. The Court will rule on the pending motion to dismiss filed on October 8, 2021 by Defendant ProCollect, Inc. (Doc. 23) at a later time.

**BACKGROUND**

In this landlord-tenant dispute, Plaintiff Kalina Scollon brings claims against Defendants, Volt Properties Camino, LLC and ProCollect, Inc. (collectively, "Defendants") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., the New Mexico Unfair Practices Act, NMSA § 57-12-1 *et seq.,* and for tortious breach of contract, and tortious debt collection.

Plaintiff alleges that she leased an apartment from Defendant Volt Properties Camino, LLC ("Volt" for purposes of this Order)[1] and that despite having properly terminated her lease, Volt unlawfully hired Defendant ProCollect, Inc. ("ProCollect") to collect on its behalf what it claimed was past-due rent and other charges from her even though she was not liable. In addition, Volt made derogatory reports to credit agencies about her and continued to do so even after she properly disputed the information, which has damaged Plaintiff's credit and caused her injury. Volt counters that Plaintiff vacated the apartment in question without providing the required notice under the terms of the lease to effectively terminate her lease obligations, and that she still owes Volt for past-due rent and other charges incurred by her under the lease.

The Complaint asserts five claims for relief:

(1) Violations of the Fair Credit Reporting Act ("FCRA") by Volt and ProCollect;
(2) Violations of the Unfair Practices Act ("UPA") by Volt and ProCollect;
(3) Tortious Breach of Contract by Volt;
(4) Tortious Debt Collection by Volt and ProCollect; and
(5) Violation of the Fair Debt Collection Practices Act by ProCollect

## DISCUSSION

Under Fed.R.Civ.12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." A motion to dismiss is proper when a plaintiff can neither receive nor obtain relief under any set of facts in the complaint. *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002). While a trial court must accept as true all well-pleaded factual allegations, a claim is subject to dismissal if it does not "possess enough heft to show "that the pleader is entitled to relief.'" *Bell Atlantic v. Twombly*, 550 U.S. 544 at 557 (2007) quoting Fed. R. Civ. P. 8(a)(2). In *Twombly* and in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court clarified the federal court pleading standard and explained what is necessary for a complaint to

---

[1] The Complaint refers to Volt Properties Camino, LLC d/b/a Camino Real Apartments as "Camino Real" in its briefs, whereas Defendants use the abbreviation "Volt." The Court will use "Volt" throughout for ease of reference.

withstand a Rule 12(b)(6) challenge. For a complaint to survive a motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff fails to allege enough facts to nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

## I.    Facts

The following facts are from the Complaint as well as the attachments to the Complaint, including the lease at issue here.[2]  For the purposes of a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true and viewed in the light most favorable to the nonmoving party. *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007).

Plaintiff and her co-tenants, Dalen Carr ("Carr") and Jesse Miller ("Miller") (collectively, the "tenants" or "Plaintiff's co-tenants"), entered into a lease ("Lease") with Volt on September 8, 2017 for an apartment in Albuquerque, New Mexico 87114.  Doc. 4-1.  The lease term ran from September 8, 2017 through August 27, 2018.  The Lease automatically renewed as a month-to-month agreement unless 60 days' written notice was provided.  If the Lease became a month-to-month agreement, then only 30 days' written notice was required to terminate.

Plaintiff moved into the Volt apartment on or about September 8, 2017, and moved out in April of 2018 (Carr had moved out earlier).

Plaintiff sent several notices to Volt stating that she had vacated the apartment:

---

[2] The Court omits most of the references to the complaint which can be found in the briefs.

(1) on September 27, 2018, Plaintiff wrote a letter to Volt stating that she had vacated the apartment five months earlier, in April of 2018.  Compl., ¶26; Doc. 4-2.  The letter stated that if Volt did not accept April of 2018 as the date of termination, it should be considered as a 30-day notice to terminate her lease by October 27, 2018.  In the letter, Plaintiff indicated that she sought "to be removed from all liability connected to the apartment and lease responsibilities hereafter." *Id.*

(2) Plaintiff wrote a second letter to Volt on October 5, 2018, reiterating her "request to [sic] for my portion of the lease . . . to be terminated." Compl., ¶26; Doc. 4-3.  Plaintiff stated in the letter that she was "not interested in being held financially responsible for an apartment on a 'month-to-month lease.'"  *Id.*  She also indicated that she was advised after placing phone calls to Volt that she could not terminate her lease without her co-tenants' approval:

> In response to my written notice, I was called and informed that I could not terminate my lease without Jesse Miller's approval, and falsely promised (again) that management would contact him to relinquish me from the lease. Despite repeatedly having this conversation, both management and Jesse Miller have failed to get back with me, let alone make progress on removing my name from the lease. If you do not comply with my request I will be forced to take further legal action, as I have already been in contact with New Mexico Legal Aid which lead to the composition of this letter.

Doc. 4-3 at 1.

(3) On October 19, 2018, Plaintiff sent a third letter (Compl., ¶26; Doc. 4-4, "Third Moveout Notice") where Plaintiff reiterated her request to be released from her obligations under the Lease.

Defendant does not directly dispute that Plaintiff did not move out of the apartment in April of 2018, but claims that her co-tenant Miller remained in the apartment and eventually fell behind on rent. (*Id.* at ¶¶ 3-4).  The Complaint alleges that "[a]t some point in late 2019, Mr. Miller fell behind on rent. He moved out of the Apartment after Camino Real threatened eviction." Compl.,

¶30.  The Complaint also asserts that Plaintiff continued paying for the rent through July of 2018, and that *Miller continued to live in the apartment and continued to pay the full rent "for months after even the latest of Ms. Scollon's written termination notices were effective."*  Compl., ¶¶28-29 (emphasis added).

According to the Complaint, Volt took the position that it was owed $1,331 relating to the apartment. Volt contacted Plaintiff and she explained what had happened. Volt hired ProCollect to collect the $1,331 from Plaintiff, despite the fact that it knew Plaintiff did not owe it anything. Compl., ¶¶31-34.  ProCollect reported the Volt debt to credit reporting agencies Equifax, Experian, and Trans Union, harming Plaintiff's credit reputation.  After Plaintiff disputed the credit reports, ProCollect failed to conduct a reasonable reinvestigation and continued to report the derogatory information.  Both Defendants continued their collection efforts.  *Id.*, ¶¶35-45.

## II.     Analysis

Volt moves to dismiss Plaintiff's Complaint in its entirety because Plaintiff never effectively terminated her lease and because the express language of the Lease establishes that Plaintiff was jointly and severally liable for the debt in question.

### A.     Timing of Notice

First, Volt contends that Plaintiff did not terminate the lease because she did not give 60-days notice and so the Lease continued on a month-to-month basis until proper termination occurred.  Doc. 24 at 6.  Volt cannot have it both ways.  Paragraph 3 of the Lease provides for *automatic* renewal on a month-to-month basis unless either party gives at least 60 days written notice of termination or intent to move out under ¶36. Doc. 4-1, ¶3.  Plaintiff alleges that Miller continued to pay rent for the apartment well after the Lease automatically renewed as a month-to-month—which would have occurred after the lease term expired on August 27, 2018.  Volt cannot

claim that the 60-day notice requirement applied when at the same time Volt continued to collect

rent from Miller after the Lease *automatically* became month-to-month under the Lease provisions.

Thus, Plaintiff was required to give only a 30-day notice. *See* Doc. 4-1, ¶3 ("In month-to-month

tenancies, no more than 30 days is required.").  Volt's argument is also a red herring because

Plaintiff alleges that Miller continued to pay the full rent for about a year *after* the latest of

Plaintiff's notices were sent to Volt and so the notices would have been effective under either 30-

day or 60-day scenarios.

      B.     <u>Relationship of Notice to Vacating Apartment</u>

Second, Volt argues that Plaintiff did not satisfy the requirements of ¶36[3] which states that

notice should be sent "[b]efore moving out":

> 36.  MOVE-OUT NOTICE.  Before moving out, you must give our repre-
> sentative advance written move-out notice as provided below.  Your
> move-out notice will not release you from liability for the full term of
> the Lease Contract or renewal term.  You will still be liable for the entire
> lease term if you move out early (paragraph 21) except under the
> military clause (paragraph 22).  YOUR MOVE-OUT NOTICE MUST
> COMPLY WITH EACH OF THE FOLLOWING:
>
> • We must receive <u>advance written notice of your move-out date</u>.  The
>   advance notice must be at least the number of days of notice
>   required in paragraph 3.  Oral move-out notice will not be accepted
>   and will not terminate your Lease Contract.
>
> • Your move-out notice must not terminate the Lease Contract sooner
>   than the end of the lease term or renewal period.
>
> YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY
> WITH ALL OF THE ABOVE.  Please use our written move-out form.  You
> must obtain from our representative written acknowledgment that we
> received your move-out notice.  If we terminate the Lease Contract, we
> must give you the same advance notice--unless you are in default.  <u>If
> neither you nor we give advance written notice as required by paragraph
> 3 at the end of the term, then this agreement shall renew on a month-to-
> month basis</u> until properly terminated.

Doc. 4-1, ¶36.  Volt argues that a move-out notice is not effective unless it is given *before the*

*tenant moves out*, Doc. 24 at 8 (emphasis in brief), and that because Plaintiff did not give notice

until over five months after she moved out, her notice was not acceptable under ¶36.  Volt's gloss

on the provision is taken out of context of the other language in ¶36 pertaining to "termination of

---

[3] The underlining in paragraph 36 above is the way the paragraph was displayed in the pleadings.

the Lease Contract" and "liability for the full term of the Lease Contract . . . ." Moreover, as Plaintiff points out, Volt's interpretation of the provision leads to a rather absurd result: if a tenant gives notice after moving out, that tenant can **never** terminate the lease. Obviously, this gloss on ¶36 makes no sense.

The more sensible interpretation is found by reading ¶36 consistent with other provisions requiring "advance written notice" before a lease is terminated. *See* Doc. 4-1, ¶¶3 & 11. *See Bank of N.M. v. Sholer,* 1984-NMSC-118, ¶ 6, 102 N.M. 78 (holding that a contract must be construed as harmonious whole with every phrase given meaning and significance). Under this interpretation (and the only one that makes any sense), "advance written notice" triggers the termination of one's liability for rent under the lease—not when one is allowed to physically move out.

Defendant's position is also undermined by the New Mexico Uniform Owner-Resident Relations Act," ("UORRA") NMSA § 47-8-1 *et seq*, which "applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." NMSA § 47-8-8. The Lease in question here specifically refers to the UORRA. Doc. 4-1, ¶1. The UORRA provides that "[n]o rental agreement may provide that the resident or owner agrees to waive or to forego rights or remedies under the law." NMSA § 47-8-16. As to termination of a month-to-month lease—which is relevant here—the UORRA is clear: "The owner or the resident may terminate a month-to-month residency by a written notice given to the other at least thirty days prior to the periodic rental date specified in the notice." NMSA § 47-8-37. Thus, it is true that Plaintiff could not escape the written notice requirement simply by vacating the apartment. However, whether or not she had moved out, once she followed the advance written notice requirement, the lease was terminated.

D.    Form of Notice

7

Volt also contends that Plaintiff's lease termination was not effective under ¶ 36 of the Lease because Volt did not provide a "written acknowledgement" of the three notices.  Under this interpretation of the Lease, a landlord may deny a tenant's notice of termination simply by refusing to respond.  This interpretation is unfounded and would violate the UORRA in three ways: (1) the UORRA only requires 30 days notice to terminate—it says nothing about "acknowledgement" (*see* NMSA §47-8-37); (2) under the UORRA, receiving notice is defined as "when it is mailed or otherwise delivered at the place of business of the owner . . ." (NMSA § 57-8-13(C)(2)); and (3) the UORRA requires "good faith" on the part of landlords (NMSA §47-8-11); refusal by a landlord to acknowledge lawful termination notices certainly cannot be considered "good faith" conduct.

Plaintiff's assertions in the Complaint sufficiently state a claim that Plaintiff's termination notices were legal and effective, and further suggest that Volt's imposition of a written acknowledgement requirement on its tenants was illegal.

E.     Volt's Legal Argument

Volt raises two other arguments, neither one of which provides a basis to find the Complaint insufficient under *Iqbal-Twombly*.  Volt first claims that Plaintiff is jointly and severally liable for all lease obligations; and second, that she remained in constructive possession of the apartment and thus bound by Miller's decision to continue in possession for successive month-to-month terms.

Volt contends that the only way for Plaintiff to escape joint and several liability was either to obtain a release from occupancy from Volt or seek contribution from her co-tenant.  Doc. 24 at 10.  This argument is specious given that Plaintiff specifically asserts (and documents) in the Complaint that she sent Volt *three* notices, all of which were ignored by Volt. The issue of joint and several liability is therefore premature to consider because Plaintiff has sufficiently alleged

facts in the Complaint supporting a plausible claim that her notices were effective to terminate her obligations under the Lease.

Volt also argues that Plaintiff remained in "constructive possession" of the apartment, even assuming that her termination notices were effective—in other words, that Miller's failure to leave the apartment following Plaintiff's termination rendered both of them liable for all successive month-to-month tenancies, essentially *forever*. This argument is not supported by any of the Lease provisions or by New Mexico law.  Volt cites only to 70 year-old California cases, claiming that "[t]here is no New Mexico precedent directly on point" *see* Doc. 24 at 9, and avoiding any reference to the UORRA which governs the Lease at issue here and which provides no support for Volt's "constructive possession" argument.

The Court agrees with Plaintiff that Volt's "constructive possession" argument also leads to an irrational and inequitable result, given that Volt chose to allow  Miller to continue renting on a month-to-month basis for a year following Plaintiff's termination notices, all the while accepting rent from Miller.  Volt had its cake, ate it for months after Plaintiff asserts she terminated her tenancy—and now wants Plaintiff to pick up the check as well.

Most importantly, Volt's "constructive possession" argument does not successfully challenge the sufficiency of Plaintiff's Complaint, which alleges a plausible claim supporting the legal theories asserted: that Plaintiff provided legal and effective notices of termination; that those notices freed Plaintiff from all obligations under the Lease; and that Defendants nevertheless pursued Plaintiff for a debt she did not owe.

Plaintiff offers arguments as why specific causes of action listed in the Complaint should not be dismissed.  Doc. 26 at 8-10.  However, the Court finds no reason to address these arguments at this time. Volt's motion is premised entirely on the proposition that Plaintiff did not effectively

terminate her lease.  Because the Court finds that Plaintiff has indeed alleged facts which support a plausible claim that she *did* provide effective notice to terminate the Lease, the legal theories asserted in the Complaint also survive dismissal under Rule 12(b)(6).

**THEREFORE,**

**IT IS ORDERED** that Defendant Volt's First Motion to Dismiss for Failure to State a Claim filed by Volt Properties Camino, LLC. **(Doc. 24)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

10