IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KALINA SCOLLON,

      Plaintiff,

      v.                                                                                                                            No. 1:21-cv-00565-WJ-JFR

VOLT PROPERTIES CAMINO, LLC, and
PROCOLLECT, INC.,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT PROCOLLECT'S
FIRST MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

THIS MATTER comes before the Court upon a First MOTION to Dismiss for Failure to State a Claim by ProCollect, Inc., ("ProCollect") filed on October 8, 2021 **(Doc. 23)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is not well-taken and, accordingly, it is denied.

BACKGROUND

In this landlord-tenant dispute, Plaintiff Kalina Scollon brings claims against Defendants, Volt Properties Camino, LLC and ProCollect, Inc. (collectively, "Defendants") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the New Mexico Unfair Practices Act, NMSA § 57-12-1 *et seq.*, and for tortious breach of contract and tortious debt collection.

Plaintiff alleges that she leased an apartment from Defendant Volt Properties Camino, LLC ("Volt" for purposes of this Order)[1] and that despite having properly terminated her lease,

---

[1] The Complaint refers to Volt Properties Camino, LLC d/b/a Camino Real Apartments as "Camino Real" in its pleadings, whereas Defendants use the abbreviation "Volt." The Court will use "Volt" throughout for ease of reference.

Volt unlawfully hired Defendant ProCollect, Inc. ("ProCollect") to collect on its behalf what it claimed was past-due rent and other charges from her even though she was not liable. In addition, ProCollect made derogatory reports to credit agencies about her and continued to do so even after she properly disputed the information, which has damaged Plaintiff's credit and caused her injury.

The Complaint asserts five claims for relief:

(1) Violations of the Fair Credit Reporting Act ("FCRA") by Volt and ProCollect;
(2) Violations of the Unfair Practices Act ("UPA") by Volt and ProCollect;
(3) Tortious Breach of Contract by Volt;
(4) Tortious Debt Collection by Volt and ProCollect; and
(5) Violation of the Fair Debt Collection Practices Act by ProCollect

## DISCUSSION

Under Fed.R.Civ.12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." A motion to dismiss is proper when a plaintiff can neither receive nor obtain relief under any set of facts in the complaint. *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002). While a trial court must accept as true all well-pleaded factual allegations, a claim is subject to dismissal if it does not "possess enough heft to show "that the pleader is entitled to relief.'" *Bell Atlantic v. Twombly*, 550 U.S. 544 at 557 (2007) quoting Fed. R. Civ. P. 8(a)(2). In *Twombly* and in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court clarified the federal court pleading standard and explained what is necessary for a complaint to withstand a Rule 12(b)(6) challenge. For a complaint to survive a motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). If a plaintiff fails to allege enough facts to nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

For the purposes of a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true and viewed in the light most favorable to the nonmoving party. *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007).

Both Defendants in this case filed separate dispositive motions. The Court recently denied the motion to dismiss filed by Defendant Volt Properties Camino, LLC ("Volt"). Doc. 36.

## I.  Facts as Alleged in Complaint

The relevant facts as alleged in the Complaint are described more fully in the Court's recent order denying Defendant Volt's motion to dismiss. Doc. 36. The Court provides the short version here for context.[2]

### A.  Facts Asserted Against Defendant Volt

Plaintiff and her co-tenants, Dalen Carr ("Carr") and Jesse Miller ("Miller") (collectively, the "tenants" or "Plaintiff's co-tenants"), entered into a lease with Volt on September 8, 2017 for an apartment in Albuquerque, New Mexico 87114. Doc. 4-1. The lease term ran from September 8, 2017 through August 27, 2018. The Lease automatically renewed as a month-to-month agreement unless 60 days' written notice was provided. If the Lease became a month-to-month agreement, then only 30 days' written notice was required to terminate.

Plaintiff moved into the Volt apartment on or about September 8, 2017, and moved out in April of 2018 (Carr had moved out earlier). Plaintiff sent several notices to Volt stating that she had vacated the apartment. On September 27, 2018, Plaintiff wrote a letter to Volt stating that

---

[2] The Court omits most of the references to the complaint which can be found in the briefs and in the Court's denial of Defendant Volt's motion to dismiss.

she had vacated the apartment five months earlier, in April of 2018. The letter stated that if Volt did not accept April of 2018 as the date of termination, it should be considered as a 30-day notice to terminate her lease by October 27, 2018.  In the letter, Plaintiff indicated that she sought "to be removed from all liability connected to the apartment and lease responsibilities hereafter." *Id.*

On October 5, 2018, Plaintiff sent another letter reiterating her "request to [sic] for my portion of the lease . . . to be terminated."  Plaintiff stated in the letter that she was "not interested in being held financially responsible for an apartment on a 'month-to-month lease.'" And on October 19, 2018, Plaintiff sent a third letter where Plaintiff reiterated her request to be released from her obligations under the Lease.  Docs. 4-2, 4-3, 4-4.

In its motion to dismiss (which the Court has denied), Defendant Volt did not directly dispute that Plaintiff did not move out of the apartment in April of 2018, but claimed that her co-tenant Miller remained in the apartment and eventually fell behind on rent. (*Id.* at ¶¶ 3-4). However, Plaintiff alleges in the Complaint that she continued paying for the rent through July of 2018 and that while Mr. Miller did fall behind on the rent at "some point in late 2019," he *continued to live in the apartment and continued to pay the full rent "for months after even the latest of Ms. Scollon's written termination notices were effective."*  Compl., ¶¶28-29 (emphasis added).

Nevertheless, Volt took the position that it was owed $1,331 relating to the apartment, even after Plaintiff explained to Volt what had happened.  Volt hired ProCollect to collect the $1,331 from Plaintiff, despite the fact that it knew Plaintiff did not owe it anything.  Compl., ¶¶31-34.

  B.  <u>Facts Alleged Against Defendant ProCollect</u>

4

Plaintiff alleges that Volt hired ProCollect ("Defendant" for purposes of this discussion) to collect the $1,331 from Ms. Scollon, despite the fact that it knew Ms. Scollon did not owe it anything. ProCollect reported the purported debt to credit reporting agencies Equifax, Experian, and Trans Union, harming Ms. Scollon's credit reputation, and acted as Volt's agent with respect to all credit reporting concerning Ms. Scollon.

In December of 2020, Ms. Scollon sent dispute letters to these credit agencies disputing ProCollect's negative and false reporting of the debt to Volt, and asked then to conduct a reinvestigation, pursuant to 15 U.S.C. § 1681i(a). She enclosed her dispute letters as proof that she did not owe money to Volt. Equifax, Experian, and Trans Union received the dispute letters and provided ProCollect with the dispute, but ProCollect either negligently or willfully failed to conduct a reasonable reinvestigation but instead, ProCollect maliciously represented to the credit agencies that Plaintiff owed the debt. Both Defendants continued their collection efforts, which caused Plaintiff irreparable injury to her credit reputation. Doc. 1 (Complaint), ¶¶35-51. *Id.*, ¶¶35-51

## II.  Analysis

In the Order denying Volt's motion to dismiss, the Court found that Plaintiff had alleged facts which support a plausible claim that she *did* provide effective notice to terminate the lease, which would also provide a plausible basis for Ms. Scollon's claim that she does not owe Volt any debt for unpaid rent. Doc. 36 at 18.

This motion seeks to dismiss all causes of action asserted against Defendant ProCollect. Its arguments parallel those which were raised by Volt in its motion to dismiss and thus, the Court's findings in Volt's motion to dismiss apply here as well.

ProCollect contends (1) that Plaintiff's notice of termination was ineffective; and (2) the lease at issue here unambiguously states that Plaintiff is jointly and severally liable for all lease obligations. Defendant claims that Plaintiff's notice of termination was ineffective because Mr. Miller continued occupying the apartment past the October 27, 2018 move-out date as indicated in Plaintiff's last notice, Doc. 4-1 and then eventually stopped paying rent  However, the Complaint alleges that Ms. Scollon continued to pay rent for about a full year *after* the last of her notices would have become effective and under those set of facts (viewed favorably to Ms. Scollon), Mr. Miller's failure to pay rent has no bearing on Plaintiff's notices of termination.

Defendant then relies on the provision in the lease related to joint and several liability to argue that Plaintiff is responsible for any rent owed by Mr. Miller:

> [e]ach resident is jointly and severally liable for all lease obligations. Each resident may be required to pay the entire rent and other amounts due without pursuing collection from any other person . . . .

Doc. 4-1 (Lease), ¶28.  This provision necessarily assumes there is a lease obligation in the first place, which in turn is premised on the ineffectiveness of Ms. Scollon's termination notices.[3] Because the Court has previously found that the Complaint sufficiently alleges that Ms. Scollon provided an effective notice of termination of her lease, Defendant cannot look to this provision as a basis for dismissal of Plaintiff's claims.

Defendant next moves to dismiss the specific causes of action asserted by Plaintiff, but again, the Court's previous findings undercut the arguments raised by ProCollect.

---

[3] Defendant acknowledges that the effectiveness of Plaintiff's termination notices is critical.  Specifically, ProCollect contends that Plaintiff's notices were ineffective because they were not acknowledged by Volt as required under ¶36 of the lease. *See* Doc. 23 at 8 (arguing that "the only potential mechanism by which Plaintiff could argue she was entitled to terminate her obligations under the Lease was Lease paragraph 36 regarding move-out notices"). This contention is a shaky one: it would allow Volt, at its unilateral discretion, to deny the tenant's notice of termination simply by refusing to respond—which the Court has previously noted is an untenable argument. *See* Doc. 36 ("Under this interpretation of the Lease, a landlord may deny a tenant's notice of termination simply by refusing to respond. This interpretation is unfounded and would violate the UORRA . . . .").

  A. <u>First Claim for Relief Under FCRA</u>

  The Fair Credit Reporting Act regulates the collection of consumers' credit information and access to their credit reports. Under the FCRA, a furnisher of information who has received notice of a dispute from a credit reporting agency ("CRA") is required to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013) (citing § 1681s–2(b)). Defendant claims that Plaintiff fails to specifically plead how ProCollect failed to conduct a reasonable investigation following notice of her dispute. Plaintiff alleges the following in the Complaint:

- After ProCollect reported the debt to her credit, Ms. Scollon disputed the credit report to ProCollect. Compl., ¶¶ 37-39.

- Ms. Scollon attached the lease as well as the dispute letters to her Complaint as Exhibits 5-7. Docs. 4-1, 4-5, 4-6 and 4-7. These letters explained in detail how Ms. Scollon terminated her lease and did not owe the debt.

- Ms. Scollon alleges that even after reporting this dispute and providing this evidence to ProCollect, ProCollect failed to conduct a reasonably reinvestigation and continued to report derogatory information to Ms. Scollon's credit reports. Doc. 1, ¶¶40-43.

  Allegations that ProCollect continued to report incorrect and derogatory credit information despite having notice of Plaintiff's dispute with Volt sufficiently allege a violation of FCRA under the *Iqbal/Twombly* standard. Therefore, Defendant's motion to dismiss is denied with respect to the First Claim for Relief.

  B. <u>Second Claim for Relief Under the UPA</u>

7

In the Complaint, Plaintiff states that both Defendants' conduct constitutes "unfair or deceptive trade practices" within the meaning of the New Mexico Unfair Practices Act ("UPA"), NMSA §57-12-2. In addition to damages, Plaintiff also seeks an injunction barring Defendants from continuing to collect on the alleged debt, including making derogatory reports to her credit. Doc. 1, ¶¶61-62, 64.[4]

"Unfair or deceptive trade practices" are defined as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made . . . in the collection of debts." NMSA § 57-12-2(D). Among the enumerated non-exhaustive list of examples provided by the statute is "stating that a transaction involves rights, remedies or obligations that it does not involve." NMSA § 57-12-2(D)(15).

Defendant takes the position that it could not have violated the UPA because Plaintiff's allegations "conclusively demonstrate that she owed a valid debt" under the lease. Doc. 23 at 16. This position is untenable, in light of the Court's previous finding that Plaintiff's allegations support a plausible claim that the notices of termination were effective and that as a result, Plaintiff does not owe Volt any money. Plaintiff further asserts that she advised ProCollect of her dispute with Volt and sent along copies of her notices of termination—and yet Defendant pursued collection efforts without inquiring into the validity of her dispute and therefore of the debt.[5] These allegations allow Ms. Scollon to proceed on this claim as well under the *Iqbal/Twombly* standard.

---

[4] Plaintiff might have been more specific in identifying the particular provisions of the UPA that were allegedly violated by ProCollect, but her allusion to Defendant's "foregoing actions" serve to put Defendant on notice as to the conduct being targeted—which is furnishing information to credit agencies regarding a debt that allegedly does not exist.

[5] There is no indication, based on the Complaint, that ProCollect conducted an investigation into the dispute. To be sure, evidence may be presented at a later time which shows otherwise, but the Court must view Plaintiff's allegations in the Complaint as true at this point in the litigation.

ProCollect appears to take issue with Plaintiff seeking injunctive relief, arguing that Plaintiff pleads no facts to support a plausible claim that she faces irreparable injury as a result of Defendant's pursuit to collect the alleged debt. *See* NMSA § 57-12-10(A) (provision allowing injunctive relief). True, Plaintiff does not go into any detail describing the alleged harm for which she seeks injunctive relief, but it is not difficult to see the harm including the negative impact on Plaintiff's credit ratings. The Court agrees with Plaintiff here in that money damages are not always adequate to restore one's former standing and thus, Defendant's motion to dismiss the Second Claim for Relief is denied.

    C.    <u>Fourth Claim for Relief - Tortious Debt Collection</u>[6]

Plaintiff alleges that "ProCollect's actions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970)." Compl. at 7, ¶68. In *Montgomery Ward,* the New Mexico Supreme Court stated that "improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy." 81 N.M. at 385. In *Montgomery Ward*, the court found that defendant was entitled to recover from the store on his counterclaim for invasion of privacy. As Plaintiff notes, the tort began as one related to invasion of privacy, but has since developed independently of invasion of privacy. This New Mexico tort concerns collection activity knowingly aimed at the wrong person, thus invading that person's privacy. *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1224 (D.N.M. 2011).

---

[6] Defendant does not challenge Plaintiff's third cause of action, tortious breach of contract, which is directed only at Defendant Volt.

9

ProCollect argues that the allegations in the Complaint do not plausibly show that its conduct regarding the debt was "improper" "when the Complaint demonstrates that Plaintiff is liable for the debt." Doc. 23 at 17.  Again, this argument misses the mark because as the Court has already found, Ms. Scollon has alleged a plausible claim that she does *not* owe the debt—which means that the debt can ultimately be found by a jury to be "improper."  In *Obenauf,* the court awarded plaintiff money damages where plaintiff continued to receive phone calls from debt collectors seeking to contact another individual about unpaid debts, despite advising the collector that he was not the person sought.[7]  785 F. Supp. 2d at 1224.  Here, Plaintiff alleges that ProCollect was made aware of the dispute over the debt but made no efforts to verify the debt and instead continued to attempt collection of it from Ms. Scollon.  These alleged facts fit well within the contours of this tort.  *See Billsie v. Brooksbank*, 525 F. Supp. 2d 1290, 1297 (D.N.M. 2007) (summary judgment precluded based on dispute of material fact as to whether garnishors knew that purported debtor was not the actual debtor) (citing *Kolker v. Sanchez*, No. CIV 90-1082 JP, 1991 WL 11691589 (D.N.M. Dec. 10, 1991)).

Plaintiff's fourth claim for relief withstands dismissal for these reasons.

D.     Fifth Claim for Relief - Violation of the Fair Debt Collection Practices Act

Plaintiff claims that Defendant's actions violated the Fair Debt Collection Practices Act ("FDCPA"), including 15 U.S.C.§§ 1692d, 1692e, and 1692f.  Doc. 1 (Compl.) at 7, ¶70.

Defendant contends that Plaintiff does not plausibly allege any conduct which resulted in harassment or abuse of Plaintiff and which is proscribed under the FDCPA in §1692d.  The Court agrees with ProCollect on this one point: the Complaint does not allege any harassing or

---

[7] Damages in *Obenhauf* were awarded after entering default judgment, which is not the case here.  However, the Court's analysis there focused on the defendant's continued debt collection efforts despite being placed on notice that the plaintiff was not liable—which the Court finds relevant in this case as well since Ms. Scollon put ProCollect on notice that the debt was not accurate.

abusive conduct by ProCollect. On the other hand, as Plaintiff notes, the FDCPA specifically prohibits the "false representation of . . . the character, amount, or legal status of any debt." §1692e. Thus, the Court finds that Plaintiff fails to state a plausible claim under either 1692d or 1692f of the FDCPA, but that she does satisfy the *Iqbal/Twombly* standard for §1692e, and so she may proceed under this provision.

    **THEREFORE,**

    **IT IS ORDERED** that Defendant ProCollect's First MOTION to Dismiss for Failure to State a Claim **(Doc. 23)** is hereby DENIED except that Plaintiff may pursue her claim brought pursuant to the FDCPA under §1692e only.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE